**Herbert F. TEICHMAN,**
**Plaintiff–Appellant,**

v.

**Mike ESPY, Secretary of Agriculture,**
**Defendant–Appellee.**

No. 95–2168.

United States Court of Appeals,
Sixth Circuit.

Argued Sept. 24, 1996.

Decided Aug. 13, 1997.

Rehearing Denied Oct. 8, 1997.

Charles T. LaSata (briefed), Globensky, Gleiss, Bittner & Hyrns, St. Joseph, MI, Judith Teichman (argued), San Francisco, CA, for Plaintiff–Appellant.

Michael L. Schipper, Asst. U.S. Attorney (argued and briefed), Office of the U.S. Attorney for the Western District of Michigan, Grand Rapids, MI, for Defendant–Appellee.

Before: NORRIS, SUHRHEINRICH and BATCHELDER, Circuit Judges.

BATCHELDER, Circuit Judge.

Plaintiff appeals the district court's order entering judgment in favor of the Secretary of Agriculture. Plaintiff brought this action to obtain judicial review of the Secretary's decision to deny his claim for relief under the Federal Tree Assistance Program of the Food, Agriculture, Conservation, and Trade Act of 1990, Pub.L. No. 101–624, § 2255, 104 Stat. 3359, 3974 (1990), for the apple trees he lost due to fire blight. For the reasons that follow, we AFFIRM the order of the district court.

## I. BACKGROUND

The facts of this case are undisputed. Plaintiff Herbert F. Teichman is the owner of Skyline Orchards, a family fruit farm located in Eau Claire, Michigan. Teichman grows apple trees for commercial purposes. In the spring of 1991, Teichman lost almost 39 acres of apple trees, over 55% of his apple tree population, due to "fire blight." Fire blight, a common and infectious bacterial disease associated with high temperatures in conjunction with high humidity, attacks apples, pears, and other orchard crops. Teichman has asserted from the beginning of this case, and it is not disputed, that the fire blight was accelerated by high winds and driving hail frequent during the spring of 1991.

As a result of his tree loss, Teichman applied for federal disaster relief pursuant to the Tree Assistance Program of the Food, Agriculture, Conservation, and Trade Act of 1990 ("FACT Act"), Pub.L. No. 101–624, § 2255, 104 Stat. 3359, 3974 (1990). Title XXII of the FACT Act, entitled "Crop Insurance and Disaster Assistance," contains four chapters. Applicable to this case is chapter 3, entitled "Emergency Crop Loss Assistance," which in turn contains five subchapters. Subchapter A, entitled "Annual Crops," contains the following definitional section:

SEC. 2251. DEFINITIONS.

As used in this chapter:

(1) DAMAGING WEATHER.—The term "damaging weather" includes but is not limited to drought, hail, excessive moisture, freeze, tornado, hurricane, earthquake, or excessive wind, or any combination thereof.

(2) RELATED CONDITION.—The term "related condition" includes but is not limited to insect infestations, plant diseases, or other deterioration of a crop of a commodity, including aflatoxin, that is accelerated or exacerbated naturally as a result of damaging weather occurring prior to or during harvest.

FACT Act, Pub.L. No. 101–624, § 2251, 104 Stat. 3359, 3974 (1990). Teichman sought relief pursuant to subchapter B, entitled "Orchards," which provides:

SEC. 2255. ELIGIBILITY.

(a) LOSS.—Subject to the limitation in subsection (b), the Secretary of Agriculture shall provide assistance, as specified in section 2256, to eligible orchardists that planted trees for commercial purposes but lost such trees as a result of freeze, earthquake, or related condition in 1990, as determined by the Secretary.

(b) LIMITATION.—An eligible orchardist shall qualify for assistance under subsection (a) only if such orchardist's tree mortality, as a result of the natural disaster, exceeds 35 percent (adjusted for normal mortality).

§ 2255, 104 Stat. at 3974. This provision was extended by the Dire Emergency Supplemental Appropriations Act of 1992, Pub.L. No. 102–229, 105 Stat. 1701 (1991), to cover losses that occurred in 1991.

The Secretary denied Teichman's claim for relief because tree loss caused by fire blight is not covered by § 2255 of the FACT Act. The Secretary stated that § 2255(a) covers tree loss resulting from freeze, earthquake, or conditions relating to freezes and earthquakes, which fire blight is not. The Secretary reasoned that the definition of "related

condition" in § 2251(2) does not apply to "related condition" as that term is used in § 2255(a).

After his administrative appeals failed, Teichman filed this action in federal district court against the Secretary seeking a declaratory judgment that fire blight constitutes a "related condition." The parties agreed that the district court should resolve this matter solely upon the administrative record. Teichman moved for summary judgment. He argued that fire blight is a "related condition" as defined in § 2251(2) and that § 2251 applies to § 2255(a). To support the latter contention, Teichman noted that the definitions in § 2251 explicitly apply to chapter 3, and that § 2255 is a part of that chapter.

The district court agreed with the Secretary's interpretation of § 2255 and ruled that Teichman's tree loss from fire blight was not covered by that section. The court explained that the definition of "related condition" contained in § 2251(2) applies only to subchapter A, "Annual Crops." *Teichman v. Espy*, 899 F.Supp. 353, 357 (W.D.Mich.1995). In other words, "related condition" in § 2255(a) does not mean the same thing as "related condition" in § 2251(2).

The court noted that in the 1989 version of the FACT Act, the portions of the statute that are labeled "subchapters" are called "subtitles." *Id.; see also* Disaster Assistance Act of 1989 ("DAA"), Pub.L. No. 101–82, 103 Stat. 564 (1989). The definition of "related condition" was therefore explicitly limited to the "Annual Crops" subtitle. DAA, Pub.L. No. 101–82, § 112, 103 Stat. 564, 576–77 (1989). It did not apply to the "Orchards" subtitle, which includes § 2255(a)'s predecessor. *See* DAA, Pub.L. No. 101–82, § 121(a), 103 Stat. 564, 577 (1989).

The court rejected Teichman's argument that Congress intended to expand coverage under § 2255(a) beyond loss due to "freeze, earthquake or related condition" when it renamed the subtitles "subchapters," and amended the definition of "related condition" to apply to "this chapter." The court reasoned that if Congress had wanted to achieve that result, it simply could have used the same or similar coverage language in subchapter B ("Orchards") as it did in subchapter A ("Annual Crops"). *Teichman*, 899 F.Supp. at 357. Moreover, the court noted that Congress used the words "chapter" and "subchapter" interchangeably throughout the 1990 FACT Act. *Id.* For example, the "Limitations on Assistance" provisions in subchapters B ("Orchards") and C ("Forest Crops") both contain definitions for the term " 'person' for purposes of this chapter." *See* FACT Act, Pub.L. No. 101–624, §§ 2257(b)(1), 2263(b)(1), 104 Stat. 3359, 3974–75 (1990). Noting that the exact same definition is set forth in both subchapters, the court reasoned that it would be redundant for Congress to prescribe the definition of "person" in both subchapters if it truly intended those definitions to apply to the entire chapter. *Teichman*, 899 F.Supp. at 357.

To support its conclusion that the definition of "related condition" in § 2251(2) does not apply to § 2255(a), the court also focused on the "as determined by the Secretary" language of § 2255(a). The court explained that this language empowers the Secretary to determine whether tree loss resulted from freeze, earthquake, or a condition related to freeze or earthquake, and therefore receives coverage under § 2255(a). *Id.* at 358.

Teichman cited a conference report stating that "fire blight may be a 'related condition' for purposes of section 2251 of [the FACT Act] and losses should be eligible for disaster payments where the condition has been accelerated or exacerbated naturally as a result of damaging weather." *See* H.R. CONF. REP. No. 102–394 (1991). The court discounted this report and explained that it only indicates that conference members intended for fire blight to be a "related condition" under § 2251. Because the court had already concluded that § 2251(2)'s definition of "related condition" does not apply to § 2255(a), the conference report did not advance Teichman's cause. *Teichman*, 899 F.Supp. at 358.

The court concluded that the Secretary's decision to deny Teichman's claim for relief is consistent with the FACT Act's mandate and does not frustrate the policies that Congress sought to implement. *Id.* The district court therefore denied Teichman's motion and be-

cause the facts were not in dispute, entered judgment in favor of the Secretary. Teichman timely appealed.

## II. DISCUSSION

### A.

■ We review the grant of summary judgment *de novo,* using the same test applied by the district court. *Henegar v. Banta,* 27 F.3d 223, 225 (6th Cir.1994) (citation omitted). "The decision to deny a motion for summary judgment, while ordinarily reviewed for an abuse of discretion, is reviewed *de novo* when it is based on the resolution of a legal issue rather than on the presence of a material issue of fact for trial." *Douglas v. Argo–Tech Corp.,* 113 F.3d 67, 70 (6th Cir. 1997) (citation omitted).

■ This case centers around the Secretary's interpretation of § 2255 of the FACT Act, and whether that section covers the loss of apple trees due to fire blight. When reviewing an agency's construction of a statute which it administers, we are confronted with two questions. We must first determine whether Congress has directly spoken to the precise issue at hand. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 2781, 81 L.Ed.2d 694 (1984). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. at 2781–82 (footnote omitted). If, however, we determine that Congress has not directly addressed the issue, we may not simply impose our own construction of the statute. *Id.* at 843, 104 S.Ct. at 2781. "Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* (footnote omitted). We need not conclude that the agency's construction is the only one that it permissibly could have adopted, or that we would have reached the same conclusion had the issue initially presented itself in judicial proceedings. *Id.* at 843 n. 11, 104 S.Ct. at 2782 n. 11 (citations omitted). "An agency's construction of a statutory scheme that it is entrusted to administer is entitled to a degree of deference," *Gallagher v. Croghan Colonial Bank,* 89 F.3d 275, 277 (6th Cir.1996) (citing *Chevron,* 467 U.S. at 844, 104 S.Ct. at 2782), and we will uphold that construction if it is reasonable. *Lansing Dairy, Inc. v. Espy,* 39 F.3d 1339, 1350 (6th Cir.1994) (citing *Rust v. Sullivan,* 500 U.S. 173, 184, 111 S.Ct. 1759, 1767, 114 L.Ed.2d 233 (1991)); *Goldin v. Federal Deposit Ins. Corp.,* 985 F.2d 261, 263 (6th Cir.1993) (citing *Air Pollution Control Dist. of Jefferson County, Kentucky v. Environmental Protection Agency,* 739 F.2d 1071, 1083 (6th Cir. 1984)).

### B.

■ Our first task is to determine whether the text of the FACT Act addresses the precise issue at hand—whether § 2255 covers tree loss resulting from fire blight. Unfortunately, the parties' arguments on this point are anything but clear. In his brief, Teichman focuses his attention on the "[a]s used in this chapter" language of § 2251(2), arguing that it clearly mandates the application of that section's "related condition" definition to § 2255, which resides in a subchapter of the relevant chapter. At oral argument, Teichman appeared to argue that § 2251(2) sets forth three distinct categories of "related conditions": insect infestations (of anything), plant diseases (of any plant) and, in the case of a crop of a commodity, "other deterioration." Teichman appeared to contend that "other deterioration" of something that is not a crop of a commodity is not a "related condition" under § 2251(2). Further, Teichman appeared to contend that only "other deterioration of a crop of a commodity" must be accelerated by damaging weather. Because fire blight is a disease, § 2251(2)'s crop of a commodity language does not apply and fire blight is a "related condition." Therefore, Teichman claims that he may recover under § 2255.

The Secretary disagrees with Teichman's reading of § 2251(2). As we understand it, he argues that the definition of "related condition" in § 2251(2) is limited to crops of commodities. In other words, § 2251(2) defines "related condition" as insect infestations

of a crop of a commodity, plant diseases of a crop of a commodity, and other deterioration of a crop of a commodity. Because Teichman's claim is for the loss of apple *trees,* which are not commodities or crops of commodities, the definition of "related condition" in § 2251(2) does not apply in this case.[1]

These two interpretations amply illustrate the ambiguous nature of the relevant statutes and the way they interact, if at all. It is clear that Teichman seeks relief for the loss of his apple trees under § 2255(a), which provides assistance to eligible orchardists who "lost ... trees as a result of freeze, earthquake, or related condition ... as determined by the Secretary." FACT Act, Pub.L. No. 101–624, § 2255(a), 104 Stat. 3359, 3974 (1990). It is also clear that the FACT Act contains only one definition of "related condition," that found in § 2251(2). Section 2251(2) states that as used in this chapter, "[t]he term 'related condition' includes but is not limited to insect infestations, plant diseases, or other deterioration of a crop of a commodity ... that is accelerated or exacerbated naturally as a result of damaging weather occurring prior to or during harvest." FACT Act, Pub.L. No. 101–624, § 2251(2), 104 Stat. 3359, 3974 (1990). What these sections really mean, however, is not clear.

Even if we accept Teichman's argument that the definition of "related condition" in § 2251(2) applies to § 2255, we must still determine whether the plain language of these statutes unambiguously resolves the question before us—whether § 2255 covers the loss of apple trees due to fire blight. We conclude that it does not. To begin with, it is unclear whether the definition of "related condition" in § 2251(2) is limited to crops of commodities. The section explicitly states that "[t]he term 'related condition' *includes*

but is not limited to* insect infestations, plant diseases, or other deterioration of a crop of a commodity." *Id.* (emphasis added). "Crop of a commodity" is not defined, and the "includes but is not limited to" language indicates that § 2251(2)'s definition may extend beyond its precise terms. Furthermore, if § 2251(2) does apply to § 2255, that section explicitly provides that it is the Secretary's duty to determine whether the loss was due to "freeze, earthquake, or related condition."

Because we cannot discern from the face of these statutes whether § 2255 covers tree loss resulting from fire blight, we move to the next step of the analysis. We must now determine whether the Secretary's conclusion that § 2255 does not cover such loss is reasonable.

From the Secretary's brief, we know that the Secretary does not read "related condition" to cover the loss of apple trees due to fire blight. The brief provides little explanation for that position. We believe, however, that there are two reasonable constructions of the relevant statutes that support the Secretary's conclusion.

The first construction starts from the premise that the plain language of § 2255 covers only the loss of trees. Teichman does not claim that trees are a commodity or a crop of a commodity. Section 2251(2) defines "related condition" as including but not being limited to "insect infestations, plant diseases, or other deterioration of a crop of a commodity." Analysis of the grammar and syntax of this definition leads to the conclusion that "insect infestations," "plant diseases" and "other deterioration" each modify "a crop of a commodity." Hence, the definition includes three types of deterioration of a crop of a commodity: from insects, from plant diseases, and from some other cause.[2] This,

---

1. The Secretary's position may be inferred from his brief, but was somewhat more cogently expressed at oral argument.

2. We acknowledge that, however this section is read, it is no model of grammar and syntax. In particular, we note that, read as we believe it should be, there is a lack of agreement between the compound subject and the verb. However, to read the clause "that is accelerated or exacerbated naturally as a result of damaging weather"

as modifying only "other deterioration of a crop of a commodity," (which is the way Teichman urges us to read it) would be to read out of the FACT Act altogether the requirement that damage from insect infestations and plant diseases be in some wise related to weather conditions. Teichman's reading would require that all insect and disease damage be covered by the Act, a result that is insupportable when the Act as a whole is considered.

of course, also means that, other than the freeze and earthquake specifically mentioned in § 2255, the "damaging weather" included in § 2251(2) and defined in § 2251(1) does not apply to Teichman's loss either.

To summarize, because Teichman seeks relief under § 2255 for the loss of apple trees due to a "related condition," and because the definition of "related condition" in § 2251(2) is limited to crops of a commodity, not trees, that definition does not apply to his loss. What then is the meaning of the term "related condition" in § 2255(a) if § 2251(2) does not apply? The obvious one—conditions related to freezes and earthquakes. Therefore, because the loss of Teichman's trees is acknowledged to be from fire blight, which is related to neither freeze nor earthquake, the loss is not covered by § 2255.

The second construction is also based on the plain language and syntax of §§ 2251(2) and 2255(a) and the presumption that these provisions mean what they say. Section 2255(a) covers only tree loss resulting from freeze, earthquake, or "related condition." "Related condition" is defined by reference to § 2251(2), which includes three categories of losses of crops of a commodity. In order to be covered as a "related condition," the loss of *trees* must result from: (1) insect infestation of a crop of a commodity; (2) plant disease of a crop of a commodity; or (3) other deterioration of a crop of a commodity. Trees are not crops of a commodity, and Teichman does not claim that a problem with the apples, which would be the crop if trees were a commodity, caused the loss of his trees. Therefore, § 2255(a) does not permit Teichman to recover for the loss of trees due to fire blight, which is neither freeze, earthquake, nor "related condition" as defined in § 2251(2).

The "includes but is not limited to" language of § 2251(2) does not detract from either possible construction. That language indicates that the definition of "related condition" in § 2251(2) includes something more, some type of damage not explicitly mentioned in the statute. The FACT Act, however, contains no further definition of "related condition," and very clearly, § 2255(a) requires the Secretary to determine whether the claimed loss of trees is the result of a "related condition." There is nothing in

§ 2251(2) that requires the Secretary to expand the definition of "related condition" beyond its ordinary meaning in the context in which it is used in § 2255(a). In other words, the Secretary may reasonably determine that a "related condition" for purposes of § 2255(a) is a condition related to freeze and earthquake, which fire blight clearly is not.

As previously noted, Teichman argues that § 2251(2) really means that "related condition" includes insect infestations, plant diseases and, when dealing with crops of commodities, "other deterioration." This argument is, however, irrelevant. Once we determine that the relevant statutory provisions do not unambiguously speak to the precise issue at hand, the question becomes whether the Secretary's construction is reasonable. We are not concerned with the reasonableness of Teichman's interpretation. The issue is whether the Secretary's determination that § 2255 does not cover tree loss due to fire blight is reasonable. We conclude that it is.

### III. CONCLUSION

For the preceding reasons, we **AFFIRM** the order of the district court denying Teichman's motion for summary judgment and entering judgment in favor of the Secretary.